UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,           )
                                    )
              Plaintiff,            )
                                    )
       v.                           )        No. 4:16 CR 528 AGF (PLC)
                                    )
TODD BECKMAN,                       )
                                    )
              Defendant.            )

**GOVERNMENT'S POST HEARING BRIEF IN SUPPORT OF DENIAL OF
DEFENDANT TODD BECKMAN'S FIRST AMENDED MOTION TO
SUPPRESS STATEMENTS & EVIDENCE**

Come now the United States of America, by and through its attorneys, Carrie Costantin,

Acting United States Attorney for the Eastern District of Missouri, and John T Davis, Assistant

United States Attorney for said District, and submits it's post hearing brief in support of denial of

Defendant Todd Beckman's First Amended Motion to Suppress Statements and Evidence. [Doc.

#107] ("Defendant's Motion")

**FACTS**

On March 9, 2017, Defendant Beckman filed his first amended motion to suppress

statements and evidence.  At the hearing on the motion, held on March 30, 2017, the government

produced four witnesses.  Following the hearing, defense was granted 14 days from receipt of the

transcript to file a post-hearing brief with the Court.  On the 14th day, Defendant Beckman

advised the Court that he would not file a post-hearing brief and rest upon the original motion

and the evidence adduced at trial.

Defendant Beckman's Motion to Suppress

The defendant's motion raises three issues with regard to suppression of the voluntary

1

statements made by Defendant Beckman and the voluntary consent to search granted by
Beckman for his business office at 11 Champion Drive, Fenton, MO.   First, Defendant Beckman
asserts that "[a]t the beginning of Defendant's custodial interrogation, he unequivocally
request[ed] counsel…" (Defendant's motion p. 1)  Second, Defendant Beckman alleges that
officers "gave Defendant and allowed him to drink an excessive amount of alcohol prior to and
during his interrogation." (Defendant's Motion p. 1.)   Further, "officers arranged and allowed
Beckman to become seriously intoxicated…so intoxicated that he collapsed in his cell the next
day…officers allowed and encouraged Beckman to become intoxicated." (Defendant's Motion
p. 4.)  Third, Defendant Beckman asserts that his consent to search the office complex at 11
Champion Drive "was not knowing, intelligent and voluntary" due to the alleged police-induced
intoxication. (Defendant's Motion p. 5.)

The government addressed all three issues at the hearing.  The testimony and evidence
adduced conclusively show Defendant Beckman, having been repeatedly advised of his Miranda
Rights, voluntarily participated in a 3-hour interview with Maplewood detectives and never
made an unequivocal request for counsel.   Further, the only evidence of alcohol consumption
produced at the hearing was of one partial glass of vodka consumed by the defendant without
forewarning to law enforcement.  The testimony clearly shows that Defendant Beckman
consumed this drink well after interrogation had ceased, after the consent to search forms were
executed and even after defense counsel arrived at the scene who himself granted oral consent to
search.

Videotaped Interview

Beginning in late November 2016, Todd Beckman was a suspect in the kidnapping and
assault of Ellis Athanis that had occurred from November 21 to November 23, 2016.  During the

2

early morning of December 1, 2016, an investigative team comprised of local law enforcement officers including FBI Special Agent Owen Cunningham established surveillance on a residence at 5016 Romaine Springs.  Investigators observed Beckman leave the Romaine Springs residence and, after making one brief stop, arrive at a condominium residence located at 1164 Stone Bluff, St. Louis, Missouri. (Trans. p. 6)  As Beckman approached the residence, Agent Cunningham and TFO Talic exited their vehicle and advised Beckman he was under arrest.  (Trans. p. 7)  Beckman, carrying a backpack, continued to proceed towards the front door and unsuccessfully attempted to enter the residence.  (Trans. pp. 7-8)  Agents arrested Beckman and asked if he had any dangerous weapons on his person.  Beckman replied there was a handgun in his Subaru vehicle. (Trans. p. 9)  If not immediately, then shortly thereafter, TFO Brian Jost, as witnessed by FBI Special Agent Owen Cunningham, advised Beckman of his Miranda Rights. (Trans. p. 9)  Defendant Beckman indicated he understood his rights.  Arresting officers requested permission to search the Stone Bluff residence and the Subaru vehicle but Beckman refused. (Trans. pp. 9-10)  Beckman remained outside the Stone Bluff residence until TFO Joseph Somogye arrived at approximately 8:30AM to transport him to the St. Louis DEA office.  (Trans. pp. 13, 102-3)

TFO Somogye arrived at the Stone Bluff address in a Cadillac Escalade accompanied by TFO Brandon McKinnon.  Officers placed Beckman in the Escalade and TFO Somogye gave McKinnon a ride to his vehicle in Fenton. (Trans. p. 103)  Initially during the car ride, Beckman was agitated and repeatedly asked why he was in handcuffs and insisted he had done nothing wrong. (Trans. p. 103)  During the ride to the DEA office, TFO Somogye advised Beckman of his Miranda Rights for the second time. (Trans. p. 104)  At no time on the ride to the DEA office did Beckman and TFO Somogye and/or TFO McKinnon discuss an attorney or Beckman's wish to remain silent.  (Trans. pp. 104-5)

3

Subsequent to Mirandizing Defendant Beckman, TFO Somogye asked him if he had any illegal drugs or weapons inside the condo at Stone Bluff.  Beckman stated that he had a personal use amount of marijuana inside the condo.  Beckman stated again that there was a firearm inside the Subaru.  (Trans. pp. 105-7)

Beckman was seated in an interview room at the DEA office that is equipped for audio and video recording of interviews.[1]  Initially, DEA TFO McKinnon sat with Beckman in the room by as they awaited the arrival of Maplewood Police Detectives David Brown and John Leclerc who would conduct the actual interview.  (Trans. p. 19)  As they waited, TFO McKinnon and Defendant Beckman engaged in casual conversation.  At approximately the 5:45 mark in the videotaped conversation, Defendant Beckman begins discussing a prior DWI arrest with TFO McKinnon.  TFO McKinnon clearly replies, "DWI's are no fun."  Beckman's response is muffled but he clearly mentions his DWI attorney "Travis."  TFO McKinnon asks, "Travis Noble?"  Beckman then makes undiscernible statements.  (Govt. Ex. 1a)  Defendant Beckman's motion to suppress characterizes this portion of the videotape as "Defendant unequivocally request[ing] counsel prior to making any statements." (Defendant's Motion p. 3)  However, TFO McKinnon testified that he did not construe this conversation in any way as an expression of Beckman's desire for an attorney's assistance.  Further, TFO McKinnon testified that he did not even understand the conversation to mean the defendant *might* be invoking his right to counsel. (Trans. pp. 19-20)

The video recording shows the arrival of the Maplewood detectives at the 12:25 mark. Detective Brown advises Beckman of his Miranda Rights for the third time at the 21:25 mark. (Govt. Ex. 1a)  At the 33:50 mark in the recording, TFO Somogye enters the room and discusses

---

[1] A video recording (disc) of the entire Beckman interview was introduced at the hearing as government's Exhibit 1a.

obtaining consent to search properties with Defendant Beckman.  Defendant Beckman signs consent to search forms for the residence at 1164 Stone Bluff, a detached garage for that residence and his Subaru vehicle.   (Govt. Ex 1a, 2 & 3; Trans. pp. 107-9)

In addition to the conversation with TFO McKinnon, Beckman's three hour videotaped statement contains several other instances where the words "attorney" or "lawyer" are mentioned.  The government introduced three (3) such portions of the recorded interview wherein Defendant Beckman clearly discussed his understanding of his right to remain silent and right to counsel, as well as his conscience decision to *not* exercise those rights.  These clips demonstrate that the defendant understood his Miranda rights and knowingly and voluntarily waived them.  [2]

### 1164 Stone Bluff St. Louis, MO consent search

Following the interview, TFO Somogye and others allowed Defendant Beckman to accompany officers to 1164 Stone Bluff for the consent search.  Beckman entered the residence with agents and directed TFO Somogye to a closet in the master bedroom.  Beckman pointed out a black bag in the closet that contained the marijuana.  Agents seized the marijuana. Nothing else of evidentiary value was located.  Similarly, nothing of evidentiary value was located in the detached garage.  (Trans. pp. 109-10)

The Subaru was parked at the Stone Bluff address and, pursuant to Beckman's written consent, agents searched and seized a Smith & Wesson .45 caliber handgun.  (Trans. p. 110)

While at the 1164 Stone Bluff address, TFO Somogye asked Beckman if he had any large sums of money or any of the ransom money from the kidnapping stored at the residence. Beckman denied any money at the residence but stated he had $5,000 of the ransom money

---

[2] These relevant portions of the video occur at the 1:28:44, 1:58:15 and 2:11:05 marks.

stored in his safe located under his desk at his business office located at 11 Champion Drive

Fenton, MO.  TFO Somogye presented Beckman with a consent to search form for 11 Champion

Drive.  Beckman read the form and signed it, allowing agents to search the office.  (Govt. Ex. 4;

Trans. pp. 111-13)

      11 Champion Drive Fenton, MO consent search

      Defendant Beckman was then allowed to accompany TFO Somogye and Maplewood

Detective David Brown in the Escalade to 11 Champion Drive Fenton, MO.  Upon arrival,

agents observed co-defendant Kerry Roades walking on the office complex property.  Detective

Brown arrested Roades outside the office building causing Defendant Beckman to become

agitated.  (Trans. pp. 113-16)

      Prior to officers entering any buildings on the property, Travis Noble, counsel for Todd

Beckman, accompanied by at least two others arrived at the scene.  Agents observed Mr. Noble

and the others enter the office building.  Eventually, an associate of Mr. Noble's informed the

agents that they would not be allowed to search the property without a search warrant. (Trans.

pp. 59-60)  Shortly thereafter, Mr. Noble exited the office building and spoke with Detective

Brown, TFO Jost and DEA Agent Nate Hart.  The officers and Mr. Noble discussed the events

leading up to their arrival at 11 Champion, including Beckman's written consent to search the

property.  Mr. Noble asked if he could speak with Mr. Beckman.  Agents told Mr. Noble that

Beckman was inside the Escalade parked nearby and that they could speak privately at the

vehicle.  Following a brief private discussion between Travis Noble and Todd Beckman at the

Escalade, Mr. Noble advised agents they could search the property without a warrant.  (Trans.

pp. 61-2, 118-9)

      Inside the office facility, Beckman directed agents to the safe under his desk that he said

not only contained $5,000 associated with the kidnapping, but also, an additional sum of money not associated with the crime.  Beckman voluntarily opened the safe and agents retrieved and seized the $5,000 as evidence.  (Trans. pp. 63, 119-20)

While on the property, agents observed a Tan Co company van that they believed was used to drop the kidnap victim off in exchange for the ransom money.  Agents discussed this with Mr. Noble who ultimately gave agents consent to seize the van.   Defendant Beckman stated he was not sure where the keys to the van were located and, assisted by TFO Somogye and Detective Brown, he looked throughout the facility and eventually found the keys.  (Trans. pp. 62-5, 120-22 Govt. Ex. 5)

At the conclusion of the search at 11 Champion, Defendant Beckman asked permission and was allowed to use the restroom at the office facility.  The bathroom is located next to a kitchenette-type room.  Agents removed Defendant Beckman's handcuffs and Detective Brown stood by at the open door of the bathroom.  Upon exiting the bathroom, Defendant Beckman, the agents and Travis Noble were standing in the kitchenette.  Beckman asked if he could get a drink and the agents, reasonably thinking Beckman would get a drink a water from the nearby sink, consented to his request.  Beckman opened the freezer compartment of the refrigerator, removed a bottle of vodka, poured a glass and consumed it.  (Trans. pp. 64-6, 123-26)

Agents transported Defendant Beckman to the Jennings jail to be housed overnight before an initial appearance in federal court the next day, Friday, December 2, 2016.  On the morning of December 2, 2016, TFO Brandon McKinnon conveyed Defendant Beckman, along with co-defendants Roades and Caleb Laubinger, from the Jennings jail to the Thomas F. Eagleton Courthouse.  During the ride to the courthouse, Beckman made an unsolicited remark to TFO McKinnon that if he does not take his Xanax medication, he is prone to seizures.

The docket entry for this cause shows that Beckman made an initial appearance before Magistrate Judge Noelle C. Collins on December 2, 2016 at 11:32AM.  The docket entry states the proceedings ended at 11:38AM.  (Doc. Entry 8)  Defendant Beckman was returned to the hold over cell at the United States Marshals to await transport back to Jennings.  The docket entry regarding the initial appearance does not indicate anything out of the ordinary occurred during the hearing.  (i.e. that the defendant was in a state of extreme intoxication, as alleged by the Defendant's Motion to Suppress)

 Later that afternoon, TFO Somogye arrived at the Marshal's on unrelated business and passed Defendant Beckman on a stretcher.  TFO Somogye asked Beckman what happened and Beckman replied that he did not want to talk to Somogye and called him a liar.

## ARGUMENT

## I.   DEFENDANT BECKMAN'S STATEMENTS WERE LAWFULLY OBTAINED

Defendant Beckman's statements regarding his knowledge of, and involvement in, the instant offense were lawfully obtained because 1) the statements were made after having been repeatedly advised of his Miranda Rights, which he knowingly and voluntarily waived; and 2) Defendant Beckman never made an unambiguous request for an attorney and, therefore, never invoked his right to counsel.

   A.  Defendant Beckman's statements were made after a knowing and voluntary waiver of
        his Miranda rights.

Defendant Beckman was read his rights per *Miranda v. Arizona* at least three times—by TFO Jost (as witnessed by FBI Agent Cunningham) shortly after his arrest, by TFO Somogye during the ride to the DEA office and by Maplewood Detective Dave Brown in the DEA interview. 384 U.S. 436 (1966).  Determining whether a defendant has waived his *Miranda*

8

rights is a two-part inquiry: "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  The 8th Circuit applies the following standard to determine whether a defendant has invoked the right to remain silent: "To adequately invoke this right and effectively cut off questioning, a suspect must indicate 'a clear, consistent expression of a desire to remain silent.'" *United States v. Adams*, 820 F.3d 317, 323 (8th Cir. 2016) (quoting *United States v. Johnson*, 56 F.3d 947, 955 (8th Cir. 1995). "We consider the defendant's statements as a whole to determine whether they indicate an unequivocal decision to invoke the right to remain silent." *Id.*

Here, Defendant Beckman was arrested and upon being advised of his Miranda rights for a second time within approximately 30 minutes, he indicated he understood his rights and *explicitly* waived those rights verbalizing that he wished to cooperate.  (Trans. P. 104, lines 14-5) In fact, not only is the record absolutely devoid of any indication that the defendant wished to remain silent, Government Exhibit 1a is a a 3-hour long videotape of the defendant continuously conversing with detectives.  Near the beginning of which, the defendant is Mirandized for a third time.

Defendant's Motion to Suppress cites to the voluntariness standard of *Mincey v. Arizona*—that waiver must be made as "the product of a rational intellect and a free will." 437 U.S. 385, 398 (1978) (quoting *Townsend v. Sain*, 372 U.S. 293, 307 (1963)). In order to determine the voluntariness of a waiver, "careful evaluation of all the circumstances of the interrogation" must be made. *Id.* at 401. The Court characterized the circumstances of the

9

*Mincey* case as follows: "The statements at issue were thus the result of virtually continuous questioning of a seriously and painfully wounded man on the edge of consciousness." *Id.*  Unless Defendant Beckman is alluding to his intoxication alleged in the motion, no facts are asserted by the defense that defendant Beckman underwent an interrogation under circumstances even remotely as extreme as those in *Mincey*.

"[A]n accused who wants to invoke his or her right to remain silent [must] do so unambiguously." *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010).  "The course of decisions since *Miranda*… demonstrates that waivers can be established even absent formal or express statements of waiver that would be expected in, say, a judicial hearing to determine if a guilty plea has been properly entered." *Id.* at 383. Waiver of the right to remain silent "can be clearly inferred from the actions and words of the person interrogated." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Berghuis,* 384.

In addition to his *explicit* waiver of his right to remain silent, Defendant Beckman also impliedly waived this right.  After being advised of his Miranda Rights on three separate occasions, indicating he understood those rights, he declined to invoke his right to remain silent continuously engaging in conversation with investigators.  This is clearly a course of conduct indicating waiver.

Allegations that the defendant was intoxicated during his interrogation are baseless. Without stating any basis for their belief, the defense motion states that "prior to and during questioning of Beckman by law enforcement, Beckman was given a large amount of alcohol by officers." (Defendant's Motion p. 3)  This is false.  The government concedes that the defendant

10

consumed alcohol at the conclusion of the consent search of his office facility at 11 Champion Drive.  However, it was a portion of a glass of vodka that the defendant, capitalizing on the removal of handcuffs to use the bathroom, poured for himself after asking officers if he could have a drink.  (Trans. pp.123-26)

The defense fails to produce any evidence in support of their unfounded assertions in the defense motion that Defendant Beckman consumed alcohol on more than one occasion and, in fact, was supplied it by the officers.

Further, the defense motion would have this court believe that Defendant Beckman consumed so much alcohol that he passed out almost 24 hours later after an unremarkable appearance before a United States Magistrate Judge.  However, the only alcohol consumption supported by the evidence occurred <u>after</u> the defendant's 3-hour statement to detectives, <u>after</u> his voluntary signing of consent to search forms, and <u>after</u> the seizure of all the evidence sought to be suppressed.  Further, the search of 11 Champion where $5,000.00 of the ransom was recovered came following Beckman's consultation with his attorney who himself granted the consent to search.  (Trans. p. 62, lines 7-8)

<u>Defendant Beckman never invoked his right to counsel</u>.

A suspect must unambiguously and unequivocally request a lawyer in order to invoke his right to counsel. *Davis v. United States*, 512 U.S. 452 (1994) (finding that the defendant did not invoke his right to counsel when he said "[m]aybe I should talk to a lawyer"). The Supreme Court—clarifying the *Edwards* rule that questioning must cease when the suspect requests a lawyer, *Edwards v. Arizona*, 451 U.S. 477 (1981)-- held that "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to

11

counsel, our precedents do not require cessation of questioning." *Id.* at 459. The suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney" in order to implicate *Edwards* and discontinue the interrogation. *Id.* Further, the officer is not required to ask clarifying questions when a suspect makes an ambiguous statement about a lawyer. *Id*. at 461. (In *Davis*, the Court held that the statement "[m]aybe I should talk to a lawyer" was equivocal and thus did not invoke the right to counsel.)

The 8th Circuit has applied the *Davis* standard in several cases. In *Dormire v. Wilkinson*, this circuit found that the question "Could I call my lawyer?" was ambiguous because a reasonable officer could have understood the suspect to be "merely inquiring whether he had the right to call a lawyer." 249 F.3d 801 (8th Cir. 2001). Similarly, in *United States v. Havlik*, the 8th Circuit found the suspect had not invoked his right to counsel when, after the officer informed the suspect of his right to counsel, the suspect responded "I don't have a lawyer. I guess I need to get one, don't I?" because the suspect's response was equivocal and could be reasonably interpreted as a request for advice rather than a request for counsel. 710 F.3d 818, 822 (8th Cir. 2013). The court further found that the suspect did not invoke his right to counsel when he said "I guess you better get me a lawyer then" because the phrase "I guess" is equivocal. *Id.*

While the audio recording of the conversation between Defendant Beckman and TFO McKinnon regarding Beckman's previous DWI arrest and representation by attorney Travis Noble is not 100% clear, subsequent statements regarding counsel shows that Defendant Beckman did not invoke his right to an attorney.  Well over an hour into the interview, Defendant Beckman clearly and boldly states, "Just so you know, I know I should have an attorney here…"  (Govt. Ex. 1a @ 1:28:44)  Slightly less than an hour after that, Defendant

Beckman emphatically declares, "If I was trying to protect myself, I would have Rosenblum here right now." (Govt. Ex. 1a @ 2:11:05)  These statements clearly indicate that Defendant Beckman did not unequivocally request counsel while chatting with TFO McKinnon about his previous representation by Noble.

Given the standard set forth by the Supreme Court in *Davis* and this circuit's precedents, Beckman did not invoke his right to counsel while in police custody. When Beckman mentioned the name "Travis," he did so in the course of a casual conversation about his past run in with the law. Beckman did not request a lawyer, let alone request one unequivocally and unambiguously. Further, as his testimony shows, TFO McKinnon reasonably believed, in light of the circumstances, that Beckman was not requesting an attorney. Similarly, at no other point during the taped interview does Beckman unequivocally or unambiguously ask for an attorney in a way that, given the circumstances and context of the statements, a reasonable police officer would believe was an invocation of the right to counsel.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Beckman's First Amended Motion to Suppress Statements and Evidence [Doc. #107] should be DENIED.

Respectfully submitted,

CARRIE COSTANTIN
Acting United States Attorney

 */s/ John T Davis*
John T Davis #40915MO
Assistant United States Attorney

CERTIFICATE OF SERVICE

      I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.


/s/ *John T Davis*
John T Davis #40915MO
Assistant United States Attorney